IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KIMBERLY NICOLE MORRIS, ) | Case No. 05-60741 |
| ) | |
| Debtor. ) | |
| ) | |
| OZARKS DEVELOPMENT I, L.L.C., ) | Adversary No. 05-6072 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KIMBERLY NICOLE MORRIS, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Plaintiff Ozarks Development I, L.L.C. (Ozarks) filed this adversary proceeding objecting to the dischargeability of its debt. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find in favor of debtor/defendant Kimberly Nichole Morris.

### FACTUAL BACKGROUND

On January 21, 2003, debtor Kimberly Nicole Morris submitted a credit application to Harry Cooper Supply Company (Cooper). In the application, Morris indicated that she owned Missouri Plumbing Company with her boyfriend, Greg Penteris. She also listed her

credit references, indicated the business was a sole proprietorship, and acknowledged that she was financially responsible for any accounts payable. Based upon that application and favorable credit references, on February 26, 2003, Cooper notified Morris that her credit application had been approved for a credit limit of $1500. The notification also stated that "[t]his initial limit is subject to revision according to current circumstances."

Eventually, Penteris, representing Missouri Plumbing, entered into a contract with Ozarks Development I, L.L.C. (Ozarks) to provide plumbing services for the construction of two apartment buildings. Penteris ordered supplies from Cooper to perform this contract. At some point, Cooper decided to increase the credit limit assigned to Missouri Plumbing. Cooper did so without notification to Morris. Penteris submitted lien waivers to Ozarks for all of the materials supplied and work performed. When Ozarks relieved Missouri Plumbing because it was dissatisfied with Penteris' performance, Missouri Plumbing owed Cooper the sum of $28,425.73. Cooper brought a mechanic's lien suit against Ozarks, Penteris, L & GST Corporation, Trustee for Great Southern Bank, and Morris in the Circuit Court of Webster County, Missouri (the Mechanic's Lien Case). On March 30, 2005, Morris filed a Chapter 7 bankruptcy petition. Cooper then dismissed her from the Mechanic's Lien case. Ozarks and Cooper eventually settled when Ozarks paid to Cooper the sum of $15,000. On July 5, 2005, Ozarks filed this adversary proceeding seeking a determination that a debt owed by Morris, including attorney's fees in the amount of $7,926.82, is nondischargeable pursuant to § 523(a)(2)(A) and (a)(4) of the Bankruptcy Code (the Code). On September 28, 2005, this

Court held a hearing.[1] At the hearing, Morris testified that she and Penteris were engaged when they moved to Missouri. She said she believed that they would be married, that she knew Penteris did not have good credit, and that she believed that after they were married they would own Missouri Plumbing jointly. She testified that, for these reasons, she filled out the credit application. She said that shortly after receiving notification that the credit application had been approved, Penteris moved out. She stated she was never notified that the credit limit had been increased, she never received any invoices from Cooper, and she never made any purchases on behalf of Missouri Plumbing.

Rhonda Wallace, the manager of Cooper, testified that she reviewed the initial credit application and decided to approve the open account based upon Morris' representations. She stated that she dealt only with Penteris after approving the application, and that she could not recall a conversation with Morris regarding the credit limit.

Ozarks claims that Cooper would not have extended credit to Missouri Plumbing if Morris had not represented that she was the owner and the person financially responsible. Ozarks further claims that the damage to Ozarks was foreseeable, therefore, the debt that Ozarks incurred, including its attorney's fees, is nondischargeable.

DISCUSSION

Ozarks admits that Morris never made any representation directly to it. While Morris did make a representation to Cooper concerning her interest in Missouri Plumbing, Ozarks never took an assignment of any claim Cooper may have had against Morris. Ozarks,

---

[1] Ozarks did not offer any evidence as to its § 523(a)(4) allegations.

therefore, must prove that it has a claim against Morris that is nondischargeable. This it did not do. At best, an owner and a subcontractor have a quasi-contractual arrangement.[2] In order to render a debt nondischargeable, the plaintiff must prove that the subcontractor committed a tort in connection with the receipt of payment.[3] Without proof of some tortious conduct, a plaintiff is left with a cause of action for breach of contract. And even if the plaintiff prevails, nothing in the Code excepts a debt for breach of contract from discharge.[4]

Ozarks must, therefore, prove that the debt was obtained by fraud or misrepresentation, pursuant to § 523(a)(2)(A) of the Code:

>   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>   . . .
>
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>   (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[5]

---

[2] *International Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo. Ct. App. 1990).

[3] *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 148 (Bankr. D. Md. 1999).

[4] *Id. See also, MacArthur Company v. Crea (In re Crea)*, 31 B.R. 239, 245 (Bankr. D. Minn. 1983) (holding that a criminal statute, which relates to theft when a contractor who received payment for improvements to real property but failed to pay its material suppliers, would not form the basis for adjudication of the debt owed to the supplier by the contractor as nondischargeable because the statute has no scienter requirement, therefore, its violation is not evidence of an intent to deceive the creditor).

[5] 11 U.S.C. § 523(a)(2)(A).

In *Field v. Mans*,[6] the United States Supreme Court held that section 523(a)(2)(A) encompasses common law misrepresentation or actual fraud.[7] To prove actual or common law fraud, a creditor must prove the following:

(1) the debtor made a false representation;

(2) at the time the representation was made the debtor knew it was false;

(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;

(4) the creditor justifiably relied upon the representation;

and

(5) the creditor was damaged.[8]

Ozarks argued that Morris' representation to Cooper caused harm to Ozarks and that such harm was foreseeable. Foreseeability, however, is not an element of § 523(a)(2)(A). There was no representation by Morris to Ozarks, and so no reliance, justifiable or not, on such a representation. And, Ozarks failed to prove that at the time Morris filled out the credit application she intended to deceive either Cooper or Ozarks. Morris testified, credibly, that she believed she and Penteris would marry and own Missouri Plumbing. She believed the business would succeed. She was not aware of any charges made on the account, and she had no reason to believe Cooper would extend the credit limit beyond $1500, without notice to

---

[6] 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995).

[7] *Id.* 516 U.S. at 70-72, 116 S. Ct. at 443-44.

[8] UCS Universal Card Serv. Corp v. Feld (In re Feld), 203 B.R. 360, 365 (Bankr. E.D. Pa. 1996).

her. And, there was no evidence to prove that she did not have the intent and the ability to pay charges up to that amount.

For all of these reasons, I find for Morris. An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: October 7, 2005

COURT TO SERVE PARTIES NOT RECEIVING ELECTRONIC NOTICE